UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY HARRIS, #788492,

       Petitioner,

                                                Case No. 13-CV-10555

v.

                                                HON. MARK A. GOLDSMITH

PAUL KLEE,

       Defendant.

_____/

**OPINION AND ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

Petitioner Corey Harris, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), in which he challenges his conviction for three counts of assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted and sentenced to concurrent terms of three-to-10 years imprisonment on the assault convictions, and a consecutive term of two years imprisonment on the felony firearm conviction in 2010.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence to support the charges against him and his convictions, the admission of other-acts evidence, and the ineffectiveness of trial counsel.  For the reasons stated below, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and denies leave to

appeal in forma pauperis.

## II. BACKGROUND

Petitioner's convictions arise out of a shooting incident at a bar in Detroit, Michigan on December 24, 2009. The Court adopts Petitioner's statement of facts to the extent that it is consistent with the record.

> The first witness was Tamia Reeves, who testified that while she was working security at the Brooksey Nightclub on December 24, 2009, she and her coworker, Aevar, were searching an individual at the door (T, Vol I, pp 141-142). She indicated that she asked a black male (identified as Mr. Harris) to move away from the doorway; whereupon she indicated that he stated "get your m*** f*** hands off" (T, Vol I, p 146). After Mr. Harris was called over by the owner, he was escorted out by Aevar and another individual named DeShawn Hillery (T, Vol I, p 147).
>
> Subsequently Mr. Harris allegedly yelled "I'll be back", and entered a car with another black male (T, Vol I, pp 148-149). Twenty minutes later, she observed an individual shooting an assault rifle from across the street (T, Vol I, pp 149-150; 152). Although she could not see the person's face during the shooting (T, Vol I, p 152), she indicated that she identified the shooter from a series of photographs that were shown to her at her home (T, Vol I, pp 154-155).
>
> On cross exam, Ms. Reeves admitted that she did not indicate in her statement that the shooter utilized an assault rife (T, Vol I, pp 177-178).
>
> James Watkins testified that he was at the Brooksey Lounge with his "old lady", and that while he was outside leaning into his truck a shooting began; whereupon he was grazed by a bullet in the leg (T, Vol II, pp 95-98). He indicated that he could not see who was shooting, and that security guards eventually pulled him into the club (T, Vol II, pp 100-101). Subsequently, he was taken to Henry Ford Hospital, but left on his own because he believed that his injuries were not serious (T, Vol II, pp 101-102).
>
> DeShawn Hillery testified that he was running security at the club on December 24, 2009, and that he observed the owner trying to calm Mr. Harris, who was standing at the door (T, Vol II, pp 123-124). He told Mr. Harris that he had to leave, and he and another

security guard escorted him out (T, Vol II, pp 125-127). After being put out of the club, Mr. Harris allegedly stated that he was coming back and that he was going to shoot the m***f*** up, and then proceeded to leave in a car with another individual (T, Vol II, pp 127-128). Later, Mr. Hillery heard things breaking in the club and went down to the floor (T, Vol II, p 130). Although Mr. Hillery identified Mr. Harris as a person holding a rifle type gun, he did not see who did the shooting (T, Vol II, pp 131-133; 139).

On cross exam, Mr. Hillery admitted that he tampered with the scene when he picked up the spent casings that were lying on the ground (T, Vol III, p 70).

Jasin Altamini testified that he was at the club at midnight, standing in line behind Mr. Harris, whom he knew by the nickname "Baby" (T, Vol III, pp 80-82). As he went into the club, he observed Mr. Harris talking to security guards (T, Vol III, p 84), but never observed Mr. Harris enter the club afterward (T, Vol III, p 85). Subsequently, while inside the club, Mr. Altamini became aware that shots were being fired; however, he did not see who did the shooting (T, Vol III, pp 85-86).

After the shooting, Mr. Harris was at Mr. Altamini's auto shop looking at a car; whereupon the police arrived and arrested him (T, Vol III, pp 96-98). He also indicated that he never knew Mr. Harris to carry a gun or a rifle (T, Vol III, pp 105-110).

Aevar Dawsey was also working as a security guard at the club when he observed an altercation at the door involving Mr. Harris and the owner; whereupon he assisted Mr. Hillery in escorting Mr. Harris out of the club as he allegedly stated "I'm going to come back up here and shut down the bar" (T, Vol III, pp 114-117; 121-122). Subsequently, he observed Mr. Harris enter a black car and leave (T, Vol III, pp 123-124).

After Mr. Hillery was informed by Ms. Reeves that the same black car was circling around Warren Ave., he observed Mr. Harris exit the black car while holding a long rifle-type of weapon, which he said was held by Mr. Harris with both hands (T, Vol III, p 126). He indicated that he observed fire coming out of the gun toward him, and that he heard glass being broken (T, Vol III, p 127). Subsequently, he observed shell casings in the street, which he removed and placed in a plastic bag (T, Vol III, pp 128-130). He also indicated that he identified the shooter from a series of photographs (T, Vol III, p 132).

On cross-exam, Mr. Dawsey admitted that, within the past 10 years, he had been previously convicted of a crime that involved an element of theft (T, Vol III, p 156).

Officer Randolph Stanley testified that he went to the Brooksey Lounge and obtained information that the shooter possibly lived on Central Street (T, Vol IV, pp 104-106). He also spoke to Mr. James Watkins at his home (T, Vol IV, pp 103-104).

Sgt. Ronald Gibson testified that he did a "video extraction" of the video tape from the Brooksey Lounge, and burned the tape to DVD discs (T, Vol IV, pp 127; 132-133).

Officer Eric Carthan testified that he went to the Brooksey Lounge and obtained statements from witnesses (T, Vol IV, pp 144-145). He also received a bag (labeled as "Hillery") of spent 7.62 x 39 shells from an individual at the Lounge (T, Vol IV, p 146).

Sgt. William Robinson testified that he went to the Brooksey Lounge and interviewed witnesses, including Mr. Dawsey, who stated that he observed the person with the gun do the shooting (T, Vol V, pp 27; 71-73). He also had Sgt. Gibson come out and obtain the video from the Lounge (T, Vol V, p 31).

Officer David Andrews, the evidence technician, testified that he responded to the Lounge and observed bullet holes in the glass block of the building (T, Vol V, p 87). He also testified that he retrieved a bullet fragment from inside of a door, and received a spent bullet from the owner of the Lounge (T, Vol V, p 88).

A motion for directed verdict was argued and denied (T, Vol V, pp 115-155).

Cureama Edwards testified that she is Mr. Harris' girlfriend, and that they have live together for some time (T, Vol VI, p 43). She indicated that she worked at an adult residential care facility, and that Mr. Harris drove a blue Grand Am, which he would use to drop her off and pick her up from work (T, Vol VI, pp 41; 47). Ms. Edwards testified that on the night of December 23, 2009, Mr. Harris dropped her off at work, and that they made telephone contact at 11:50 p.m., where she stated that she was going to be late, because the person who was going to relieve her was having babysitter issues (T, Vol VI, pp 44; 47). She indicated that she made telephone contact with Mr. Harris at 12:30, where it was agreed that he would pick her up from work (T, Vol VI, p 48). Ms. Edwards testified that Mr. Harris pulled into the driveway of the

> adult residential care facility at 1:00 a.m., and they proceeded to go home and stay for the remainder of the night (T, Vol VI, pp 49-50). She indicated that only Mr. Harris was in the vehicle when he picked her up from work (T, Vol VI, p 56).
>
> On cross-exam, Ms. Edwards stated that she did not go to the police with the information she possessed; however, she did divulge this information to Mr. Harris' lawyer (T, Vol VI, pp 64-66).
>
> Kassandra Fortson testified that she is the manager at the adult residential care facility, and that she and Ms. Edwards were coworkers who worked different shifts (T, Vol VI, p 76). She indicated that on the night of December 23, 2009, she made telephone contact with Ms. Edwards at 11:30 p.m., stating that she was going to be late, because she was having babysitter issues (T, Vol VI, p 77). She indicated that she subsequently arrived at work at approximately 12:45 p.m. - 12:50 p.m., and that she observed Mr. Harris and Ms. Edwards backing out of the driveway (T, Vol VI, pp 79-80). She further indicated that Mr. Harris and Ms. Edwards were in the vehicle Mr. Harris had always utilized when dropping Ms. Edwards off and picking her up from work (T, Vol VI, p 82).
>
> Mr. Harris was convicted of three counts of assault with intent to do great bodily harm and felony firearm (T, Vol VII, pp 9-10). He was sentenced to concurrent terms of 3 to 10 years, consecutive to a 2 year term for felony firearm.

Pet'r Mem. of Law at 7-11 (cm/ecf pages) (Dkt. 1).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. See Def. Br. at 17-43 (cm/ecf pages) (Dkt. 8-11). The court found that the claims lacked merit and affirmed Petitioner's convictions. People v. Harris, No. 304046, 2012 WL 1648876 (Mich. Ct. App. May 10, 2012). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. See People v. Harris, 823 N.W.2d 578, 579 (Mich. 2012).

Thereafter, Petitioner filed his federal habeas petition challenging the sufficiency of the evidence to support the charges against him and his convictions, the admission of other-acts

5

evidence, and the ineffectiveness of trial counsel. Respondent has filed an answer to the petition (Dkt. 7), contending that it should be denied because one of the claims is barred by procedural default, and all of the claims lack merit.

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v.

Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and

7

follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

## IV. ANALYSIS

### A. Procedural Default

As an initial matter, Respondent contends that Petitioner's second habeas claim

concerning the admission of other-acts evidence is barred by procedural default due to the failure to object at trial. It is well settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix v. Singletary, 520 U.S. 518, 525 (1997). In this case, the procedural issue is intertwined with Petitioner's ineffective assistance of trial counsel claim, and the substantive issues are easier to resolve, such that the interests of judicial economy are best served by addressing the merits of the claim.

### B. Merits of Petitioner's Claims

#### 1. Sufficiency of the Evidence Claims

Petitioner first asserts that he is entitled to habeas relief because there was insufficient evidence to submit the assault with intent to commit murder charges to the jury, and there was insufficient evidence presented at trial to support his assault with intent to do great bodily harm less than murder convictions. The Michigan Court of Appeals denied relief on both of these claims. With regard to the assault with intent to commit murder charges, the court ruled that the trial testimony provided sufficient circumstantial evidence from which a rational jury could infer that Petitioner had the specific intent to kill. Harris, 2012 WL 1648876, at *2. The court also ruled that any error in submitting the charges to the jury was harmless error, because he was not convicted of those charges. Id. With regard to the assault with intent to do great bodily harm less than murder, the court ruled that the testimony regarding Petitioner's threats to shoot up the bar, the similarity between his vehicle and the one used during the shooting, his use of a rifle, the

9

injury to a bar patron, and the eyewitness identifications of him as the shooter provided sufficient evidence to support his convictions. Id. at *3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, Petitioner cannot show that the denial of his motion for a directed verdict and the submission of the assault with intent to commit murder charges to the jury violated his constitutional rights, because the jury did not convict him of those charges. Although, as discussed below, the Supreme Court has clearly established that it is a due-process violation to convict a defendant on a charge for which there is insufficient evidence, "the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." Long v. Stovall, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006). The acquittal on the greater charge renders the submission of that charge harmless. Id. at 752; see also Johnson v. Hofbauer, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (same). Moreover, Petitioner's claim that the trial court erred by refusing to enter a directed verdict is a state-law claim, which is not cognizable on federal habeas review. See King v. Trippett, 27 F. App'x 506, 510 (6th Cir. 2001) (holding that a "trial court's alleged misapplication of state law was not cognizable in a federal habeas corpus proceeding").

Second, even if such a claim were cognizable, Petitioner cannot prevail because there was sufficient evidence to support the submission of the assault with intent to commit murder charges to the jury. Under Michigan law, the elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." Warren v. Smith, 161 F.3d 358, 361 (6th Cir. 1998) (citing Michigan law); Mich. Comp. Laws § 750.83. The prosecution must prove beyond a reasonable doubt that the

defendant committed the charged offense. People v. Wolf, 489 N.W.2d 748, 751 (Mich. 1992). The use of a lethal weapon supports an inference of an intent to kill. People v. Turner, 233 N.W.2d 617, 619 (Mich. Ct. App. 1975). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, People v. Jolly, 502 N.W.2d 177, 180 (Mich. 1993), including identity, People v. Kern, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967), and the defendant's intent or state of mind, People v. Dumas, 563 N.W.2d 31, 34 (Mich. 1997), including the specific intent to kill. People v. Unger, 749 N.W.2d 272, 286 (Mich. Ct. App. 2008).

In this case, the bar employees' testimony that Petitioner threatened to shoot up the bar when he was being removed from the bar, the bar employees' testimony that a car consistent with Petitioner's car drove by the bar a short time later, DeShawn Hillery's testimony that he saw Petitioner armed with a rifle, Tamia Reeves' testimony that she saw fire coming from Petitioner's gun, Aevar Dawsey's identification of Petitioner as the shooter, and the fact that Petitioner fired shots at the bar (hitting one patron) provided sufficient evidence from which a rational juror could find that he committed the shooting, and that he had the specific intent to kill. The Court finds that the trial court neither erred nor violated Petitioner's constitutional rights by submitting the assault with intent to commit murder charges to the jury for its consideration.

Third, the prosecution presented sufficient evidence at trial to support Petitioner's convictions for assault with intent to do great bodily harm less than murder. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus

on whether, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). "The <u>Jackson</u> standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Brown v. Palmer</u>, 441 F.3d 347, 351 (6th Cir. 2006) (quotation marks omitted). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). <u>Martin v. Mitchell</u>, 280 F.3d 594, 617 (6th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1004 (2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial, and then the state court on appellate review — as long as those determinations are reasonable. <u>Brown v. Konteh</u>, 567 F.3d 191, 205 (6th Cir. 2009), <u>cert. denied</u>, 558 U.S. 1114 (2010). "[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from the evidence admitted at trial." <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 4 (2011) (per curiam). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788 (6th Cir. 2003). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." <u>Id.</u> at 788-789.

Under Michigan law, the elements of assault with intent to commit great bodily harm less than murder are: "(1) an assault, i.e., an attempt or offer with force and violence to do corporal hurt to another coupled with (2) a specific intent to do great bodily harm less than murder." <u>People v. Bailey</u>, 549 N.W.2d 325, 331 (Mich. 1996); Mich. Comp. Laws § 750.84. Again, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. <u>Wolf</u>, 489 N.W.2d at 751. The Michigan courts have defined the intent to do great

bodily harm as "an intent to do serious injury of an aggravated nature." People v. Mitchell, 385 N.W.2d 717, 718 (1986). An intent to harm the victim can be inferred from the defendant's conduct. People v. Parcha, 575 N.W.2d 316, 319 (Mich. Ct. App. 1997). As noted above, direct or circumstantial evidence and reasonable inferences therefrom may constitute satisfactory proof of the elements of an offense. Jolly, 502 N.W.2d at 180.

In this case, the same testimony that supported the submission of the assault with intent to commit murder charges to the jury, i.e., the testimony that Petitioner threatened to shoot up the bar, the testimony that a car consistent with Petitioner's car drove by the bar, and the testimony that Petitioner returned to the bar, exited his car armed with a rifle, and fired shots at the bar, provided sufficient evidence to support Petitioner's convictions for assault with intent to commit great bodily harm less than murder.

Petitioner challenges the inferences and credibility determinations made by the jury at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. Jackson, 443 U.S. at 326; Walker v. Engle, 703 F.2d 959, 969–970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."), cert. denied, 464 U.S. 951 (1983). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The trial testimony, viewed in a light most favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the crimes of assault with intent to commit great bodily harm less than murder and felony firearm. Therefore, the Court concludes that habeas relief is not warranted on these claims.

### 2. Admission of Other-Acts Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other-acts evidence, namely testimony that he had been in the bar on a prior occasion and had gotten into a scuffle. The Michigan Court of Appeals denied relief on this claim, finding that the evidence was properly admitted under state law as evidence of identity. Harris, 2012 WL 1648876, at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state procedure or evidentiary law are generally not cognizable as grounds for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). As the Sixth Circuit explained, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (citing Estelle, 502 U.S. at 69-70).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting the other-acts testimony under Michigan law, Petitioner merely alleges a state-law violation, which does not justify federal habeas relief. Bey v. Bagley, 500 F.3d 514, 519 (6th Cir. 2007). State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Additionally, as to the admission of other acts, the Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental

conceptions of justice. Dowling v. United States, 493 U.S. 342, 352-353 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state-court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). The Court finds that Petitioner fails to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief. He has not shown that the admission of the other-acts evidence rendered his trial fundamentally unfair. The other-acts evidence was relevant and arguably admissible on the issue of identity under Michigan Rule of Evidence 404(b). Counsel did not object to the evidence, and the prosecution did not make an improper propensity argument at trial. Petitioner fails to establish that the admission of the other-acts evidence was erroneous or, more importantly, that it rendered his trial fundamentally unfair. Therefore, the Court concludes that habeas relief is not warranted on this claim.

### 3. Ineffective Assistance of Trial Counsel Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the admission of the other-acts evidence at trial. The Michigan Court of Appeals denied relief on this claim. It found that Petitioner had failed to show that counsel erred, given that the other-acts evidence was admitted for a proper purpose. It also found that he had failed to show that he was prejudiced by counsel's conduct, given that the prosecution presented significant evidence of Petitioner's guilt at trial. Harris, 2012 WL 1648876 at *5-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." Id. at 689. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. at 689.

Second, the defendant must show that such performance prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792). The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

The Supreme Court has confirmed that a federal court's consideration of ineffective

assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review, due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Harrington, 131 S. Ct. at 788 (quotation marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788.

In this case, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct, given the Michigan Court of Appeals' ruling that the other-acts evidence was properly admitted into evidence. Counsel cannot be deemed deficient for failing to make a futile or meritless motion. See Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Moreover, as discussed by the Michigan Court of Appeals, the prosecution presented significant evidence of Petitioner's guilt at trial, including his threats to shoot up the bar shortly before the incident, testimony placing him at the scene, and eyewitness testimony identifying him as the perpetrator. Given such evidence, there is no reasonable probability that the admission of the other-acts evidence affected the outcome at trial. Thus, Petitioner fails to establish that trial counsel was ineffective under the Strickland standard. Therefore, the Court concludes that habeas relief is not warranted on this claim.

### C. Certificate of Appealability and Leave to Appeal In Forma Pauperis

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his claims.  Accordingly, a certificate of appealability is not warranted in this case.  The Court also denies Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous.  See, e.g., Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002); Fed. R. App. P. 24(a).

## V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt. 1).  The Court also declines to issue a certificate of appealability and denies leave to appeal in forma pauperis.

SO ORDERED.

Dated:  March 31, 2015                s/Mark A. Goldsmith
    Detroit, Michigan                MARK A. GOLDSMITH
                                      United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2015.

                                                s/Carrie Haddon
                                                Case Manager